UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KEVIN CHARLES FORD,** | : | |
| Petitioner | : | CIVIL ACTION NO. 07-01182 (CKK) |
| | : | |
| v. | : | |
| | : | |
| **JOHN CAULFIELD,** | : | |
| Respondent | : | |

### FEDERAL RESPONDENTS' OPPOSITION TO PETITIONER'S AMENDED PETITION FOR A WRIT OF HABEAS CORPUS

The federal respondents, by and through their attorney, the United States Attorney for the District of Columbia, hereby respectfully file their opposition to the petitioner's amended petition for a writ of habeas corpus. In support of his amended petition, the petitioner claims that the U.S. Parole Commission ("the Commission") did not have jurisdiction to issue a parole violator warrant on February 17, 2004 because he should have received credit towards the service of his original three-month supervised release term for his time in custody from October 12, 2001 to October 17, 2001 and from July 7, 2003 to July 23, 2003, which would have resulted in the expiration of his term of supervision on February 1, 2004, prior to the issuance of the warrant. Moreover, the petitioner argues that the February 17, 2004 parole violator warrant was not executed in a timely fashion which prejudiced the petitioner. However, the time the petitioner "erroneously" spent in custody can not be applied to reduce his term of supervised release, and the petitioner's term of supervision had not expired at the time the Commission issued its warrant, and therefore the Commission had jurisdiction to issue the February 17, 2004 parole violator warrant. In addition, the purported delay in the execution of this warrant was in large part due to the petitioner evading supervision and, in any event, the petitioner has not

demonstrated that this delay was unreasonable or that he suffered prejudice. Accordingly, the petitioner's amended petition for a writ of habeas corpus should be summarily denied.

## PROCEDURAL HISTORY

On September 17, 2002, the petitioner, Kevin C. Ford, was sentenced in Superior Court Case No. F6069-01 for attempted distribution of heroin to a term of imprisonment of one year, followed by 90 days of supervised release, the execution of which was suspended as to all but time already served, and a term of 12 months of supervised probation. See Exhibit A-1 (Judgment and Commitment Order dated 9/17/02).[1] On July 24, 2003, the petitioner's probation was revoked and he was sentenced to a term of imprisonment of one year, followed by 3 months of supervised release. See Exhibit A-2 at p. 5 (Federal Bureau of Prisons Sentence Monitoring Computation Data) and Exhibit B (Judgment and Commitment Order dated 7/24/03). Because the petitioner had been in custody from his arrest on September 25, 2001 until October 11, 2001 and from May 7, 2002 until December 17, 2002, the Federal Bureau of Prisons determined, on December 17, 2003, that, with credit for time in custody, the petitioner had completed the 12-month prison term as of November 24, 2003. See Exhibit A-2 at p. 6. The petitioner was released from custody the next day on December 18, 2003, at which time he commenced his 3-month supervised release term. See Exhibit A-2 at p. 4.

However, the petitioner failed to report for supervision after his release and, on February 17, 2004, the Commission issued a violator warrant for the petitioner. See Exhibit C (Warrant).[2]

---

[1] All of the referenced exhibits are attached to the government's original opposition to the petitioner's pro se petition for a writ of habeas corpus.

[2] The U.S. Parole Commission has jurisdiction pursuant to D.C. Code § 24-133(c)(2) over all offenders serving terms of supervised release imposed by the Superior Court of the District of

The Commission charged the petitioner with failing to report for supervision, using dangerous and habit forming drugs, and failing to report a change in his residence. See Exhibit D (Warrant Application).

On August 18, 2004, the Commission advised the petitioner that he was eligible for an "expedited revocation procedure" pursuant to 28 C.F.R. § 2.66 if he was willing to accept responsibility for his violations, waive his right to a revocation hearing, and consent to revocation on the record. See Exhibit E (Letter dated 8/18/04).[3] The Commission advised the petitioner that, if he agreed to the proposal, it would revoke his supervised release and provide a new term of imprisonment of 12 months and a new term of supervised release of 48 months. Id. at p. 2. On September 1, 2004, the petitioner accepted the Commission's expedited revocation proposal. Id. at p. 3. On September 7, 2004, the Commission, in accordance with the terms of the expedited proposal, issued its decision to revoke the petitioner's supervised release term and impose a new prison term of 12 months, followed by a new term of supervised release of 48 months to commence upon his release from custody. See Exhibit F (Notice of Action).

The petitioner received credit towards the service of the 12 months in prison for the "extra time" that he had served before being released on December 18, 2003 and, on June 29, 2005, the petitioner was released from custody to begin his 48-month supervised release term.

---

Columbia under the Sentencing Reform Amendment Act of 2000.

[3] Under the "expedited revocation procedure," the supervised releasee accepts responsibility for his violations, waives his right to a revocation hearing, consents to the sanction proposed by the Commission, and waives his right to appeal the revocation decision. The Commission considers use of the procedure set forth in 28 C.F.R. § 2.66 in all revocation cases under its jurisdiction, including D.C. supervised releasees.

See Exhibit A-2 at p. 4.[4]

The petitioner again failed to comply with the conditions of his supervision and, on February 1, 2006, the Commission issued a violator warrant for the petitioner and charged him with failing to report to his supervision officer as directed, failing to submit to drug testing, using dangerous and habit forming drugs, and failing to report a change in his residence. See Exhibit G (Warrant) and Exhibit H (Warrant Application).

On October 19, 2006, the petitioner accepted another expedited revocation proposal from the Commission. See Exhibit I at p. 6 (Letter dated 10/06/06). However, the petitioner advised the Commission that, although he accepted the offer, he did not waive his challenge to the Commission's jurisdiction over him, requested that the Commission review the time that he had already served and noted that he had been arrested for shoplifting in August 2006, and believed that the expedited offer should encompass this charge of shoplifting. Id.

On October 24, 2006, the Commission issued its decision to revoke the petitioner's term of supervised release and imposed a new prison term of 12 months, followed by a new term of supervised release of 36 months. These terms corresponded with the terms of the expedited proposal signed by the petitioner. See Exhibit J. Under the heading "Note" the Commission advised the petitioner that it had determined that it continued to have jurisdiction to revoke his term of supervised release and impose a new term of imprisonment. Id. The Commission also noted that the petitioner had not been charged with violating his supervised release by committing the offense of shoplifting and thus he would not be awarded credit for time in local

---

[4] Specifically, the petitioner was given credit for time in custody from November 25, 2003, the date BOP originally calculated that the petitioner should have been released through December 18, 2003, when he was released. See Exhibit A-2 at p. 4.

custody on that charge. Id.

The petitioner was released on August 10, 2007 to begin his new 36-month term of supervised release.

# ARGUMENT

I. **THERE IS NO MERIT TO PETITIONER'S ARGUMENT THAT HE SHOULD RECEIVE CREDIT FOR EXTRA TIME THAT HE SERVED TOWARDS HIS SUPERVISED RELEASE TERM**

There is no merit to the petitioner's claim that the time he purportedly served in custody from October 12, 2001 until October 17, 2001 and July 7, 2003 to July 23, 2003 should be applied towards the service of his 3-month term of supervised release imposed by the Superior Court on July 24, 2003. The petitioner contends that, if he had been properly credited with time spent in custody, he should have been released on November 1, 2003 to begin his three-month term of supervised release. Thus, he argues that his term of supervised release should have expired on February 1, 2004 and that the Commission did not have jurisdiction to issue the violator warrant on February 17, 2004. According to the Bureau of Prisons' original calculation, the petitioner should have been released on November 24, 2003 but he was not, in fact, released until December 18, 2003.[5]

---

[5] The petitioner is correct that he is entitled to custody credit for October 12, 2001 to October 17, 2001 and BOP has given the petitioner credit for this time frame and applied it towards a subsequent term of imprisonment. See Exhibit A-2 at p. 2. Thus, according to the most recent BOP calculations, the petitioner should have been released on November 19, 2003. However, assuming arguendo that the petitioner's 3-month supervised release commenced on November 19, 2003, his supervision would not have expired before February 17, 2004, when the Commission issued the warrant charging him with violating the conditions of supervised release. Therefore, the Commission had jurisdiction to issue a warrant for him, even if he had received credit for the time period of October 12, 2001 to October 17, 2001, prior to the issuance of the warrant.

However, the petitioner also asserts that he should be given credit for time in custody

However, regardless of the time the petitioner erroneously spent in custody before being released to supervised release, this time can not be applied to reduce his term of supervised release. To the contrary, supervised release commences on the date that the person is released from imprisonment. See D.C. Code § 24-403.01(b)(5); see also 18 U.S.C. § 3624(e). Moreover, it is settled law that a prisoner who serves excess prison time, even if it was served as the result of government error, cannot use that time to reduce his term of supervised release. See United States v. Johnson, 529 U.S. 53, 58 (2000) ("[t]he objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release"); Williams v. Sherman, 214 Fed.Appx. 264, 266 (3rd Cir. 2007) (challenge to parole revocation that arguably delayed commencement of supervised release term rendered moot when petitioner was released; term of supervised release "cannot be reduced by reason of excess time served in prison") (quotation marks and citation omitted); United States v. Jackson, 426 F.3d 301, 305 (5th Cir. 2005) (offender denied credit for time spent in state prison towards supervised release even though the prison term was later reduced by state court based on a due process violation during parole revocation); Pettit v. Lehman, 43 Fed.Appx. 8, 9 (9th Cir. 2002) ("extra" time spent in prison cannot be credited against remaining term of supervised release or financial obligation);

---

from July 7, 2003 to July 23, 2003, when he was purportedly in pre-trial custody at Howard University Hospital. If the petitioner was, in fact, under police guard, at the hospital, he would be in custody and entitled to credit. However, while the petitioner has presented a form in which there is a handwritten notation that the petitioner was at the hospital, the petitioner has not presented any evidence to establish how long the petitioner was at the hospital and whether he was under police guard during this time frame. The undersigned has reviewed the Department of Correction's inmate records, the Court's file and the petitioner's supervision files and has not found any evidence to support the petitioner's contention that he was in the hospital, under guard, from July 7, 2003 to July 23, 2003. Accordingly, the petitioner has failed to substantiate his claim that he is entitled to custody credit for this time frame, and has likewise failed to establish that his supervised release term ended prior to the issuance of the violator warrant.

Dildabanian v. Samuels, 2007 WL 1876490, *3 (D.N.J. June 26, 2007) (even if BOP should have reduced term of imprisonment by one year, "the length of a term of supervised release cannot be reduced by reason of excess time served in prison") (quotation marks and citation omitted); United States v. Libby, 495 F.Supp.2d 49, 53 n. 4 (D.D.C. 2007) (the purpose of supervised release is to assist the transition into the community and begins on the day the prisoner is released); cf. United States v. Bowe, 309 F.3d 234, 240 (4th Cir. 2002) (denying credit against term of imprisonment and supervised release for time spent on probation during pendency of appeal because, in part, Congress had manifested an intent to require full service of supervised release term).[6] Accordingly, the petitioner was not entitled to have that time applied to the completion of his supervised release term, and therefore the petitioner's term of supervision had not expired when the Commission's February 17, 2004 violator warrant was issued.[7]

**II.    There Is No Merit To Petitioner's Argument That He Has Been Prejudiced Due To A Purported Delay In The Execution Of His Violator Warrant**

There is no merit to the petitioner's argument that he has been prejudiced by a delay in the execution of the February 17, 2004 violator warrant because the delay was not unreasonable and was caused by the petitioner's own actions, and the petitioner has not shown prejudice as a result of the delay. Moreover, the petitioner waived this argument by accepting the

---

[6] The petitioner's attempt to distinguish Johnson from the facts of his case are unpersuasive. The policy behind supervised release is to help in the transition from incarceration to the community and reducing the term of supervision would be detrimental to this transition. As the subsequent cases make clear, Johnson limits the court's ability to reduce a supervision term based on over-served time and the petitioner has cited no cases to the contrary.

[7] However, the Federal Bureau of Prisons has given the petitioner credit for this over-spent time towards the 12- month prison term that the Commission required him to serve after it revoked his term of supervised release. See Exhibit A-2 at p. 4.

Commission's expedited revocation proposal.

 The parole violator warrant, which was issued on February 17, 2004 was not executed until July 26, 2004–a period of only five months.  A parole violator warrant must be executed with "reasonable diligence and reasonable dispatch."  Shelton v. U.S. Board of Parole, 388 F.2d 567, 574 (D.C. Cir. 1967); see also Bennett v. Bogan, 66 F.3d 812, 818 (6th Cir. 1995), cert. denied, 516 U.S. 1150 (1996); Gaddy v. Michael, 519 F.2d 669, 672-73 (4th Cir. 1975), cert. denied, 429 U.S. 998 (1976); Schmanke v. Hemingway, 2002 WL 34230308, * 4 (E.D. Michigan 2002) (5 month delay in issuance of violation warrant not unreasonable in the absence of "an intentional failure to act").  However, if the parolee prevents execution of the warrant by his own actions, he can not complain of the delay in its execution. See Shelton, supra, 388 F.2d at 574 ("a violator who has succeeded in evading the authorities is in no position to complain of a delay"); Bennett, supra, 66 F.3d at 818-819 ("Because Petitioner failed to report to his probation officer and failed to remind the State of New Jersey that he was required to serve a state sentence, he is in part responsible for the delayed execution of the warrant. His lack of diligence . . . precludes him from complaining that the Commission's [five and one half years] delay constituted inexcusable neglect."); Castillo v. United States, 391 F.2d 710, 711 (2nd Cir. 1968) (five month delay not unreasonable due to defendant's admitted widespread travels); Gomez v. LeFevre, 1988 WL 88444, *1-2 (N.D. N.Y. 1988) (delay in execution of probation warrant for four years was not unreasonable given the probationer's fugitivity), aff'd., 840 F.2d 1318 (2nd Cir. 1989); Rossello v. U.S. Board of Parole, 261 F.Supp. 308, 310 (M.D. Pa. 1966) (delay in execution of warrant of five months was due to parolee's fugitivity and therefore not unreasonable); United States ex rel. v. Kenton, 252 F.Supp. 344, 345 (D. Conn. 1996) (in determining whether delay in

execution of warrant was reasonable, court should consider the length of the delay, efforts to execute warrant, and conduct of parolee in frustrating the execution). The violator warrant was issued on February 17, 2004 because, in part, the petitioner had failed to report to his supervision officer as required, had moved from his address, and had failed to provide a new address to his supervision officer ("his whereabouts are unknown"). See Exhibit D and Petitioner's Exhibit S. Therefore, the delay in the execution of the violator warrant was due to the fact that the government did not know the whereabouts of the petitioner. Moreover, at any time, the petitioner could have resolved this issue by reporting in person to his supervision officer, as he knew he was required to do.

In addition, the supervision officer's report also indicated that information about the violator warrant, the petitioner's last known addresses, and other information was provided to the U.S. Marshal's warrant squad as early as March 11, 2004 to assist the warrant squad in locating the petitioner and executing the warrant. See Petitioner's Exhibit S. Thus, the petitioner has not shown that the government's efforts to locate the petitioner were unreasonable, nor that a 5 month period represents unreasonable delay, given the petitioner's own evasive actions.

Moreover, delay in and of itself does not warrant relief; the petitioner must also show that he suffered "actual prejudice" arising from an unreasonable delay. See United States v. Sanchez, 225 F.3d 172, 175 (2nd Cir. 2000) (delay in execution of "violation warrant does not, in and of itself violate a defendant's due process rights"); Shelton, supra, 388 F.2d at 574 ("delay will not in and of itself suffice to show prejudice, except in an extreme case, and actual prejudice vel non is the focal point of the inquiry"); cf. Sutherland v. McCall, 709 F.2d 730, 733 (D.C. Cir. 1983) (petitioner failed to show that thirty-three month delay in conducting revocation hearing

prejudiced his defense); Robinson v. U.S. Parole Comm'n., 2006 WL 2244629, *2 (D.D.C. August 3, 2006) (petitioner must demonstrate that delay was unreasonable and prejudicial); Farmer v. U.S. Parole Comm'n., 2005 WL 354007, *1 (D.D.C. Feb. 14, 2005) (same). In this case, the petitioner has not established that this very brief delay in the execution of the warrant has caused him any prejudice; he has not proven that his ability to defend himself against the violation charges has been substantially impaired and therefore has not established prejudice sufficient to entitle him to habeas relief. See Paul v. McFadin, 1997 WL 407843, *2 (10th Cir.) (parolee must show actual prejudice caused by unreasonable delay), cert. denied, 522 U.S. 1005 (1997); Bennett, supra, 66 F.3d at 818-19 (delay between issuance and execution of violator warrant does not violate due process unless Commission sought a tactical advantage or parolee was prejudiced); cf. Villarreal v. U.S. Parole Comm'n., 985 F.2d 835, 837 (5th Cir. 1993) (parolee must show actual prejudice was caused by unreasonable delay in revocation hearing); Cortinas v. U.S. Parole Commission, 938 F.2d 43, 45 (5th Cir. 1991) (habeas petition denied where petitioner failed to assert his ability to present facts or contest violation at revocation hearing was affected by the delay). Accordingly, the petitioner has not shown that the five months between issuance of the violator warrant and its execution was unreasonable and that he suffered actual prejudice.

  Moreover, by accepting the Commission's expedited proposal, which he (and his attorney) accepted on September 1, 2004, the petitioner waived his right to challenge the revocation procedures on this ground. See Exhibit E. Thus, the petitioner is now in the position of a litigant who challenges agency action after having consented to the agency taking that action, through a voluntary waiver of his right to a revocation hearing at which he could have contested

the action.[8] Accordingly, the petitioner has waived this claim and it should be summarily denied. Cf. Duckett v. Quick, 282 F.3d 844, 848 (D.C. Cir.) (argument that due process was violated because parolee was denied right to cross-examine witnesses in parole revocation hearing failed because parolee waived right to cross-examine witnesses), cert. denied, 537 U.S. 863 (2002); Ogburn v. U.S. Parole Comm'n., 2006 WL 1933363, *2 (W.D. Va July 13, 2006) (complaint concerning delayed revocation hearing rendered moot by acceptance of expedited revocation proposal).

## **CONCLUSION**

For the foregoing reasons, the petitioner's amended petition for a writ of habeas corpus should be summarily denied.

---

[8] See Morrissey v. Brewer, 408 U.S. 471, 488 (1972) (a parole revocation hearing is the parolee's ". . . opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation").

          Respectfully submitted,

          JEFFREY A. TAYLOR
          United States Attorney
          D.C. Bar Number 498-610

            /s/  Robert D. Okun
          ROBERT D. OKUN
          Assistant United States Attorney
          Chief, Special Proceedings Division
          D.C. Bar Number 457-078

            /s/ Sherri L. Berthrong
          SHERRI L. BERTHRONG
          Assistant United States Attorney
          D.C. Bar No. 249-136
          Sherri.Berthrong@usdoj.gov
          Special Proceedings Division
          555 4th Street, N.W., Room 10-450
          Washington, D.C. 20530
          (202) 514-6948

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the United States' Opposition has been filed electronically with the Court, this 24th day of February, 2008.

            /s/ Sherri L. Berthrong
          Sherri L. Berthrong
          Assistant United States Attorney