**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KEVIN C. FORD,                       )
                                     )
                    Petitioner,      )          Civil Action No. 07-01182 (CKK)
                                     )
        v.                           )
                                     )
JOHN CAULFIELD,                      )
                                     )
                    Respondent.      )
                                     )

## REPLY IN SUPPORT OF PETITIONER'S AMENDED
## PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner Kevin C. Ford, through his undersigned attorneys, respectfully submits this

reply in support of his Amended Petition for a Writ of Habeas Corpus ("Petition"). As explained

in the Petition, repeated miscalculations by the Bureau of Prisons have thrown Mr. Ford into a

vicious cycle of supervised release, hypertechnical violations of that release, additional

incarceration, and yet more supervised release. The net result of that cycle, owing to the Bureau

of Prisons' erroneous calculations, is that Mr. Ford's original sentence of one year of

incarceration plus ninety days of supervised release has been more than tripled – to three years of

incarceration plus thirty-six months of supervised release.

In its opposition, the government effectively concedes all of the factual underpinnings of

Mr. Ford's Petition. The government does not dispute that Mr. Ford, through no fault of his

own, was inexplicably held in custody by the Bureau of Prisons' for almost a month after the

term of his underlying sentence ended. See Federal Respondents' Opposition to Petitioner's

Amended Petition for a Writ of Habeas Corpus ("Opp.") at p. 5 ("According to the Bureau of

Prisons' original calculation, the petitioner should have been released on November 24, 2003 but

he was not, in fact, released until December 18, 2003."). The government further concedes that even that "original calculation" by the Bureau of Prisons erroneously extended Mr. Ford's sentence. See id. at p. 5 n.5 ("Thus, according to the most recent BOP calculations, the petitioner should have been released on November 19, 2003."). Several months after Mr. Ford was finally, albeit belatedly, released from incarceration on the underlying charge, the United State Parole Commission issued a warrant on February 17, 2004 for Mr. Ford based on alleged technical violations of the terms of his three-month term of supervised release. The government again concedes the significant delay in excess of five months in executing and adjudicating that warrant. See id. at 3, 8. Finally, the government fails to offer any rebuttal to the common-sense assertion that such delay prejudiced Mr. Ford by substantially limiting his ability to defend against the alleged violations of his supervised release, as any defense or explanation at that late date would have required Mr. Ford to recall with specificity his actions on the relevant days more than eight months prior. In light of the repeated sentence miscalculations and delays by the government, the remaining portion of Mr. Ford's thirty-six month term of supervised release should be terminated in the interest of justice.

## ARGUMENT

I.    THE FIVE MONTH DELAY IN ADJUDICATING THE FEBRUARY 17, 2004 WARRANT ALLEGING VIOLATIONS OF THE TERMS OF SUPERVISED RELEASE EXTENDED BEYOND THE PERIOD "REASONABLY NECESSARY" FOR ADJUDICATION.

The significant delay in adjudicating the February 17, 2004 warrant alleging violations of the terms of supervised release extended far beyond any period "reasonably necessary" for such adjudication and substantially prejudiced Mr. Ford. The power of the United States Parole Commission to revoke a term of supervised release is not absolute. To the contrary, such power

only "extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration . . . ." 18 U.S.C. § 3583(i) (emphasis added). Thus, as the government concedes, "[a] parole violator warrant must be executed with 'reasonable diligence and reasonable dispatch.'" Opp. at 8 (quoting Shelton v. U.S. Board of Parole, 388 F.2d 567, 574 (D.C. Cir. 1967)). A failure to exercise such reasonable diligence may prejudice the defendant "by substantially limiting the ability to defend against the charge that the conditions of supervised release were violated." United States v. Ramos, 401 F.3d 111, 116 (2d Cir. 2005).

As explained in Mr. Ford's Petition, the facts unequivocally establish that adjudication of the February 17, 2004 warrant extended beyond any period reasonably necessary for such adjudication. Although the parole violator warrant was issued on February 17, 2004, the government waited more than five months, until July 26, 2004, to execute that warrant. The sole reason for that delay evidenced by the record is that the government erroneously entered the warrant into its tracking system. See Exhibit S.[1] Indeed, the warrant was executed only one week after that governmental oversight was corrected on July 19, 2004. See id. Despite the documentary evidence establishing that the delay in execution of the warrant was caused by yet another government mistake, the government asserts without basis that such delay was caused by "petitioner's own evasive actions." Opp. At 9. The government, however, cites no evidence in the record to support such an assertion. In fact, no evidence exists, documentary or otherwise, that any attempt to execute the warrant was made before July 26, 2004, much less that such an attempt failed because Mr. Ford "evaded" service.

---

[1]     All references to exhibits refer to those attached to Mr. Ford's Petition.

Furthermore, the government's five-month delay in executing the parole violator warrant prejudiced Mr. Ford "by substantially limiting [his] ability to defend against the charge that the conditions of supervised release were violated." Ramos, 401 F.3d at 116. The warrant at issue alleged, inter alia, that Mr. Ford failed to report for supervision on specified days in January 2004 and failed a drug test on January 5, 2004. See Exhibit L. Although caused by an apparent error in its warrant tracking system, the government's five-month delay in executing the warrant effectively ensured that Mr. Ford would be unable to defend against the warrant's allegations because such defense would require Mr. Ford to recall with specificity his actions on the particular days referenced in the warrant. The Court should therefore find that such delay extended beyond any period "reasonably necessary" to adjudicate the warrant pursuant to 18 U.S.C. § 3583(i) and that such delay prejudiced Mr. Ford.[2]

**II.    THE UNITED STATES PAROLE COMMISSION LACKED JURISDICTION TO REVOKE MR. FORD'S SUPERVISED RELEASE, AND TO IMPOSE ADDITIONAL TERMS OF INCARCERATION AND SUPERVISED RELEASE, BECAUSE THE FEBRUARY 17, 2004 WARRANT WAS ISSUED AFTER MR. FORD'S TERM OF SUPERVISED RELEASE SHOULD HAVE EXPIRED.**

In any event, the United States Parole Commission lacked jurisdiction to revoke Mr. Ford's supervised release based on the February 17, 2004 warrant because that warrant was

---

[2]    The government's assertion that Mr. Ford "waived his right to challenge the revocation procedures on this ground" – by accepting the Parole Commission's expedited revocation proposal on September 1, 2004 – should fall on deaf ears. Any waiver of the rights to a parole revocation hearing provided under the Federal Rules of Criminal Procedure – including the right to "appear, present evidence, and question any adverse witness," Fed. R. Crim. P. 32.1(b)(2) – must be knowing and voluntary. See, e.g., United States v. Hodges, 460 F.3d 646, 651 (5th Cir. 2006) ("[W]aivers of the rights protected by Rule 32.1 must be knowing and voluntary."). Because there is no evidence that the government informed Mr. Ford that the five-month delay in executing the warrant was the result of its own computer error, much less that the Bureau of Prisons had repeatedly miscalculated his incarceration time, any waiver by Mr. Ford could not be considered "knowing and voluntary."

issued after Mr. Ford's term of supervised release should have expired.    The Parole

Commission's authority to revoke a term of supervised release, and to impose additional terms of

imprisonment and supervised release, is expressly limited to those warrants or summons issued

before the expiration of a defendant's term of supervised release.    See 18 U.S.C. § 3583(i).

Courts have therefore held that they lacked jurisdiction to revoke a defendant's supervised

release where a warrant or summons was not issued prior to the termination of that supervised

release. See, e.g., United States v. Hazel, 106 F. Supp. 2d 14 (D.D.C. 2000).

Application of that rule to the instant case mandates the termination of Mr. Ford's current

term of supervised release.  Solely as a result of the Bureau of Prisons' repeated miscalculations

of Mr. Ford's sentence, Mr. Ford was not released from prison on the underlying sentence until

December 18, 2003.  See Opp. at 2. As explained in the Petition, however, Mr. Ford should have

been released on November 1, 2003.[3]  See Petition at 2.  Had Mr. Ford been released on the

correct date, his three-month term of supervised release would have expired on February 1, 2004,

well in advance of the issuance of the February 17, 2004 parole violator warrant.  The Parole

---

[3]        Although the government now concedes that the Bureau of Prisons has twice
miscalculated Mr. Ford's sentence and that he should have been released on November 19, 2003,
the government maintains that Mr. Ford should not be given credit for time in custody from July
7 to July 23, 2003.  As explained in the Petition, a bench warrant for failing to appear at a show
cause hearing was executed on Mr. Ford on July 7, 2003.  Mr. Ford was subsequently held in the
custody of the Superintendent of the D.C. jail through July 23, 2003, see Exhibit J, although a
portion of that time he was being supervised and treated at Howard University Hospital for leg
ulcers.  In refusing to credit Mr. Ford for that time period, the government asserts that there is no
evidence that Mr. Ford was under police guard while at the hospital.  That assertion, however, is
belied by the government's own argument that Mr. Ford was evading service of the parole
violator warrant at that time.  The government cannot have it both ways.  Had Mr. Ford been
evading service – as the government suggests without any basis – then it is unlikely, to say the
least, that upon his arrest on July 7, 2003, the government would have placed him under hospital
care without guard.

Commission therefore lacked jurisdiction under 18 U.S.C. § 3583(i) to revoke Mr. Ford's supervised release, and to impose additional terms of incarceration and supervised release, based upon a warrant issued after Mr. Ford's supervised release should have terminated.

The government asserts, however, that the Parole Commission maintained jurisdiction over Mr. Ford despite the concededly erroneous sentence calculations. In support of that assertion, the government relies principally upon United States v. Johnson, 529 U.S. 53 (2000). As explained in the Petition, such reliance is misplaced. While incarcerated, the defendant in Johnson had two of his convictions vacated based upon subsequent Supreme Court precedent. See id. at 55. The defendant's sentence was recalculated in light of the vacated convictions, resulting in the defendant having already served more time in jail than the new sentence imposed. See id. The defendant therefore argued that his term of supervised release should be reduced by the amount of extra time that he had served in jail. The Supreme Court's rejection of that argument is wholly inapposite in the instant case. Indeed, the defendant's incarceration in Johnson at the time he was re-sentenced was unquestionably legitimate based upon existing precedent. In sharp contrast, there was no legitimate reason for the Bureau of Prisons to incarcerate Mr. Ford more than six weeks beyond the date that he should have been released. Neither Johnson nor any of the other cases cited by the government mandates a finding that the Parole Commission maintained jurisdiction over Mr. Ford under the facts of this case. Because the Commission lacked jurisdiction under 18 U.S.C. § 3583(i) to revoke Mr. Ford's supervised release, Mr. Ford's current term of supervised release should be terminated.

In the event that the Court finds Johnson to be controlling precedent, Mr. Ford respectfully requests that, pursuant to the Supreme Court's guidance in that case, the Court

- 6 -

terminate his current three-year term of supervised release after the expiration of one year. As
the Court explained:

> There can be no doubt that equitable considerations of great weight
> exist when an individual is incarcerated beyond the proper
> expiration of his prison term. The statutory structure provides a
> means to address these concerns in large part. The trial court, as it
> sees fit, may . . . terminate an individual's supervised release
> obligations "at any time after the expiration of one year . . . if it is
> satisfied that such action is warranted by the conduct of the
> defendant released and the interests of justice."

Johnson, 529 U.S. at 60 (quoting 18 U.S.C. § 3583(e)(1)). The prejudice to Mr. Ford resulting

from the Bureau of Prisons' miscalculations cannot be overstated. Those miscalculations have

more than tripled Mr. Ford's period of incarceration and supervised release under the original

sentence for his underlying crime. It is difficult to imagine a situation where the "interest of

justice" warranting termination under 18 U.S.C. § 3583(e)(1)) would be more compelling.

## CONCLUSION

Based on the foregoing, Mr. Ford respectfully requests that this Honorable Court grant

the Amended Petition for a Writ of Habeas Corpus, terminate the remaining portion of the thirty-

six month term of supervised release that Mr. Ford is currently serving, and grant such other and

further relief as this Court deems just and proper.

Respectfully submitted,

_____/s/_____
J. William Koegel, Jr.
D.C. Bar No. 323402
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC  20036

wkoegel@steptoe.com
(202) 429-6408

Philip Fornaci
D.C. Bar No. 434824
Washington Lawyers' Committee for Civil Rights
& Urban Affairs
11 DuPont Circle, N.W.
Suite 400
Washington, DC 20036

*Counsel for Kevin C. Ford*

Dated:  April 7, 2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 7, 2007, a copy of the foregoing Reply in Support of Petitioner's Amended Petition for a Writ of Habeas Corpus has been filed electronically with the Court and served by electronic mail upon:

Robert D. Okun  
Sherri L. Berthrong  
Special Proceedings Division  
555 4th Street, N.W., Room 10-450  
Washington, DC 20530  
Sherri.Berthrong@usdoj.gov  

Phillip A. Lattimore, III  
Carl J. Schifferle  
Steven J. Anderson  
Suite 600S  
441 Fourth Street, N.W.  
Washington, DC 20001  
Carl.schifferle@dc.gov  
Steve.anderson@dc.gov  

*Counsel for the Federal Respondents*

*Counsel for the District of Columbia*

_____/s/_____  
J. William Koegel, Jr.