# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **KEVIN CHARLES FORD, SR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 07-1182 (CKK)** |
| | ) | |
| **JOHN CAULFIELD,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Kevin Charles Ford, Sr., filed a pro se petition for a writ of habeas corpus while confined in the Central Treatment Facility in the District of Columbia. Subsequently, counsel entered an appearance for Ford and filed two amended petitions. Ford has since been released from confinement, but his challenge to the United States Parole Commission's continuing jurisdiction over him survives. The federal respondents urge the Court to summarily deny the petition. Because the record establishes that Ford's Superior Court sentence expired before February 17, 2004, when the Parole Commission issued a warrant for his arrest, the Court will grant Ford's petition for a writ of habeas corpus and issue an order releasing Ford from the remainder of the supervised release imposed by the Parole Commission.

### I. BACKGROUND

The record shows that on September 25, 2001, Ford was arrested and charged in the Superior Court of the District of Columbia with distributing heroin. *See* Petitioner's Second Amended Petition for a Writ of Habeas Corpus ("Pet."), Exs. A, B at 1. Ford was jailed for 23 days and then, on October 17, 2001, was released pending trial subject to certain conditions. *Id.*

Ex. B at 2, Ex. C. After Ford failed to appear for his arraignment as ordered, he was arrested on

May 6, 2002, pursuant to a Superior Court "no bond" bench warrant. *Id.* Ex. D. Held without

bond, Ford pled guilty to a charge of attempted distribution of heroin and was sentenced to serve

twelve months in prison followed by ninety days of supervised release. *Id.* ¶¶ 1, 9 & Ex. E. The

execution of the original sentence of confinement was suspended as to all but time served, and

Ford was instead placed on twelve months of "supervised probation," the first three of which

were to be served in a halfway house. *Id.* ¶ 9 & Ex. E. The three months' confinement in a

halfway house expired December 17, 2002, at which point Ford was released to the community

on supervised probation. *Id.* ¶ 9 & Ex. F. The parties agree that as of December 17, 2002, Ford

had spent 248 days in custody, comprised of the 23 days in 2001 and 225 days in 2002. *See id.*

¶ 9; Federal Respondents' Opp'n to Pet.'s Am. Pet. for a Writ of Habeas Corpus ("Second

Opp'n") at 2, 5 n.5 (concluding that despite an earlier, different calculation based on an error in

the institution's reported jail credit time incorrectly reflecting a release date of 10-11-01, *see* Pet.

Ex. B at 1, "[t]he petitioner is correct that he is entitled to custody credit for October 12, 2001 to

October 17, 2001 . . . ." ).

Later, after Ford failed to appear in court as ordered to answer to allegations of violating

the terms of his supervised probation, a Superior Court "no bond" bench warrant was issued on

June 20, 2003, and executed on July 7, 2003 with Ford's arrest. *Id.* ¶ 10 & Ex. I. Two days after

his arrest, the Superior Court committed Ford without bond to the custody of the Superintendent

of the District of Columbia Jail until disposition of the violations charges. *Id.* Ex. J. At his

disposition hearing on July 24, 2003, the Superior Court reinstated Ford's original sentence of

"one year in jail with credit for time served," followed "upon release from imprisonment" by

"three months supervised release." *Id.* Ex. K (Sentence of the Court); *see also id.* ¶ 11. Upon

release from imprisonment on December 18, 2003, *see* Second Opp'n at 2, Ford began serving

his sentence of three months of supervised release. Based on allegations that Ford had violated

the terms of his supervised release, the United States Parole Commission issued a warrant on

February 17, 2004 for Ford's arrest.[1] Pet. ¶ 12 & Exs. L & M.

The federal respondents concede that Ford was detained longer than the Superior Court

sentence had authorized. *See* Second Opp'n at 5 & n.5 (conceding that "according to the most

recent . . . calculations, the petitioner should have been released on November 19, 2003," but was

detained until December 18, 2003). The parties disagree, however, as to whether Ford was still

under the Parole Commission's jurisdiction on February 17, 2004 when the Commission

authorized his arrest. *See id* at 5 n.5 (asserting that "the Commission had jurisdiction to issue a

warrant for him" on February 17, 2004); *cf.* Pet. ¶ 29 ("The warrant for Mr. Ford's supervised

---

[1] Pursuant to the Sentencing Reform Amendment Act of 2000, the United States Parole Commission has jurisdiction over all convicts serving terms of supervised release imposed by the Superior Court of the District of Columbia. *See* D.C. Code § 24-133(c)(2). Ford was not arrested on the Commission's February 17, 2004 warrant until July 26, 2004. Pursuant to that arrest, Ford and the United States Parole Commission entered into a consent disposition whereby Ford was sentenced to a new twelve-month term of imprisonment, followed by 48 months of supervised release. Pet. ¶ 12. After serving the new twelve months of imprisonment, Ford was released but subsequently arrested for alleged violations of the terms of release. Pet. ¶ 13. Pursuant to another agreed disposition, Ford was sentenced to a second new term of twelve months in prison, this time followed by 36 months of supervised release. *Id.* After serving the second new term of twelve months of imprisonment, Ford was released, then again arrested for violating the terms of his release, and sentenced to a new term of twelve months of incarceration, this time without any supervised release to follow. Pet. ¶ 14; Federal Respondents' Opp'n to Petitioner's Second Amended Petition for a Writ of Habeas Corpus ("Third Opp'n") at 1 n.1. Ford appealed, and on September 15, 2008, the United States Parole Commission reduced Ford's latest term of imprisonment to nine months, to be followed by twelve months of supervised release. Pet. ¶ 15; Third Opp'n at 1 n.1. On November 15, 2008, Ford was released from confinement to begin serving his twelve-month sentence under supervision in the community. Pet. ¶ 16; Third Opp'n at 1 n.1.

release violation was not issued until February 17, 2004, which is after the term of his supervised

release should have expired."). Ford contends that his sentence of imprisonment was fully

satisfied by November 1, 2003, that his sentence to supervised release expired February 1, 2004,

and that the United States Parole Commission had no authority over him on February 17, 2004,

when the Commission issued the warrant for his arrest.[2] Pet. ¶¶ 1, 11, 29. The federal

respondents counter that Ford should have been released from incarceration on November 19,

2003,[3] and that he was still under the Superior Court sentence and the jurisdiction of the Parole

Commission on February 17, 2004, when the Commission issued its arrest warrant for Ford.

Second Opp'n at 5 n.5. Alternatively, they argue that "regardless of the time [Ford] erroneously

spent in custody before being released to supervised release, this time can not be applied to

reduce his term of supervised release." *Id.* at 6.

The resolution of the parties' differences centers in the first instance on whether Ford is

entitled to custody credit for any or all of the seventeen days starting with his arrest on July 7,

2003 pursuant to a "no bond" bench warrant issued by the Superior Court and running through

July 23, 2003, the day before the Superior Court reinstated its original sentence. Ford claims that

he is entitled to custody credit for those seventeen days. Pet. ¶¶ 10, 27. Respondents maintain

---

[2] In addition, Ford argues that the delay of more than five months in executing the arrest warrant was not "reasonably necessary," 18 U.S.C. 3583(i), and therefore the arrest was not authorized. *Id.* ¶ 24. That Court does not reach this argument in disposing of this petition.

[3] Neither party addresses or explains how a release date of November 19 is derived by adding seventeen days to a release date of November 1. In light of the record facts, however, this slight discrepancy is immaterial to the Court's disposition. Therefore, the point here is to merely acknowledge an unexplained discrepancy.

that Ford "has failed to substantiate his claim that he is entitled to custody credit for this time frame," and have not applied custody credit for these days.  Second Opp'n at 5 n.5.

## II.  LEGAL STANDARD

The writ of habeas corpus extends to provide relief to a person under constructive federal custody "in violation of the constitution or laws of the United States."  28 U.S.C. § 2241(c)(3); *see also Justices of Boston Municipal Court v. Lydon,* 466 U.S. 204, 300 (1984) ("Our cases make clear that the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody.") ( quotation marks omitted); *LoBue v. Christopher,* 82 F.3d 1081, 1082 (D.C. Cir. 1986).  While the law accords a rebuttable presumption of regularity to the conduct of government officers conducting government business, *United States v. Crusell,* 81 U.S. 1, 4 (1871), "the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law, . . . , and the habeas court must have the power to order the conditional release of an individual unlawfully detained."  *Boumediene v. Bush,* 128 S. Ct. 2229, 2266 (2008) (quoting *INS v. St. Cyr,* 533 U.S. 289, 302 (2001)).

There is no inflexible required procedure for all habeas cases.  The habeas corpus inquiry "cuts through all forms and goes to the very tissue of the structure.  It comes in from the outside, not in subordination to the proceedings, and although every form may have been preserved, opens the inquiry whether they have been more than an empty shell."  *Frank v. Mangum,* 237 U.S. 309, 346 (1915) (Holmes, J., dissenting) (quoted in *Boumediene,* 128 S. Ct. at 2270).  Therefore, "[h]aving considered the petition," a court should adopt one of a variety of procedures that is "most appropriate to the case" to reach the merits of the petition.  *Dorsey v. Gill,* 148 F.2d

- 5 -

857, 865 (D.C. Cir. 1945) (identifying "at least ten" alternative procedures for determining a habeas petition).

## III. DISCUSSION

To resolve the dispute in this case, the Court will first determine whether Ford is entitled to custody credit for any or all of the seventeen-day period from his arrest on July 7, 2003 until the Superior Court's July 24, 2003 disposition. If Ford is entitled to more custody credit than the respondents have conceded, then the Court will determine whether Ford was still under the Superior Court's sentence of supervised release and, consequently, under the jurisdiction of the Parole Commission on February 17, 2004. There can be no doubt that if the Superior Court's sentence expired prior to February 17, 2004, any exercise of authority over Ford by the Parole Commission on or after February 17, 2004 was not duly authorized by law.

A.    *Ford is Entitled to Custody Credit for Period of July 7 through July 23, 2003*

Ford asserts that he was in custody from the point of his arrest on July 7, 2003 through July 24, 2003, when he was taken before the Superior Court, and that he spent some portion of that time in the Howard University Medical Center receiving treatment for leg ulcers. Pet. ¶ 10. The respondents concede that if Ford actually spent time in custody at the hospital, he is entitled to custody credit for that time. Second Opp'n at 5 n.5 ("If the petitioner was, in fact, under police guard, at the hospital, he would be in custody and entitled to credit."); *see also* 18 U.S.C. § 3585(b) (directing that credit custody be awarded "for any time . . . spent in official detention . . . as a result of the offense for which the sentence was imposed); Pet. Ex. K (July 24, 2003 "Sentence of the Court" ordering "credit for time served").

- 6 -

Multiple subpoenas to the Howard University Medical Center failed to produce a response from the custodian of those records. *See* Pet.'s Response to Order to Supplement the Record ("Pet.'s Suppl.") at 1.  Nonetheless, the record submitted by Ford contains documents showing that he was in custody continuously from July 7, 2003 through July 23, 2007.  These documents are:

> (*i*) a "no bond" bench warrant issued by the Superior Court on June 20, 2003 and executed July 7, 2003, *see* Pet. Ex. I;
>
> (*ii*) a portion of the Superior Court's Docket for petitioner's criminal case, showing an entry dated July 7, 2003 with a notation "Bench warrant executed.  U.S. Marshal Service notified.  Lock-up no. USL 89.  Jacket forwarded to felony," *see* Pet.'s Suppl. Ex. 2 at 2;
>
> (*iii*) a SMART Drug Status Report printout noting that Ford was in "Lock Up" on July 7, 2003, *see* Pet.'s Suppl. Ex. 2 at 3; and
>
> (iv) a "no bond" commitment order issued by the Superior Court on July 9, 2003, *see* Pet. Ex. J.

The "lock-up" referred to in these documents is the Metropolitan Police Department's central cell block, the police holding facility for persons in custody awaiting an appearance in Superior Court.  This undisputed record submitted by Ford shows that he was continuously in custody during this seventeen-day period, and is entitled to custody credit for those days.[4]

---

[4] Both the Superior Court's "no bond" bench warrant and its "no bond" commitment order directed law-enforcement officers to take Ford into custody and to keep him in custody.   In the absence of any additional evidence, these two orders establish that Ford was in custody during the seventeen-day period at issue.  The law presumes that governmental officers perform the duties they are required to perform. *Crusell,* 81 U.S. at 4.  Although such a presumption is subject to rebuttal, the federal respondents have not offered evidence sufficient to rebut the presumption in this case.  Fed. R. Evid. 301 ("[A] presumption imposes on the party against

In addition to the evidence Ford submitted, the Court takes judicial notice of the docket entries related to Ford's Superior Court Criminal Case No. F-6069-01, of which pages 10 and 11 are appended to this memorandum opinion. These docket entries confirm the conclusion that Ford was maintained in continuous custody in the weeks following his arrest on July 7, 2003. The docket shows that on July 7, 2003, Ford was supposed to have appeared before Superior Court Judge Ann O'Regan Keary (Courtroom 214), but "did not make cut-off," so the matter was continued to the next day. *See* App, docket entry for July 7, 2003. The practice in the Superior Court is that if a defendant is not in the courthouse by a certain "cut-off" time, then that defendant is not presented that day to the court, but is held overnight in the central cell block at police headquarters. On July 8, 2003, the court was "unable to locate def[endan]t" and the "show

---

whom it is directed the burden of going forward with evidence to rebut or meet the presumption . . . ."). They state only that

> while the petitioner has presented a form in which there is a handwritten notation that the petitioner was at the hospital, the petitioner has not presented any evidence to establish how long the petitioner was at the hospital and whether he was under police guard during this time frame. The undersigned has reviewed the Department of Correction's inmate records, the Court's file and the petitioner's supervision files and has not found any evidence to support the petitioner's contention that he was in the hospital, under guard, from July 7, 2003 to July 23, 2003. Accordingly, the petitioner has failed to substantiate his claim that he is entitled to custody credit for this time frame, and has likewise failed to establish that his supervised release term ended prior to the issuance of the violator arrest.

*Id.* The "form" the respondents refer to is the Superior Court order expressly committing the petitioner to the custody of the superintendent of the D.C. Jail without bond. *See* Pet. Ex. J. The "handwritten notation" in the margin appears to be the handwriting of the deputy clerk who prepared the form order for the Superior Court judge's signature by filling the form's blanks with the appropriate information specific to this case. That notation, in its entirety, reads "Hospital case / D.C. Jail, Howard University Medical Center." *Id.*

- 8 -

cause [was] cont[inue]d." *Id.,* docket entry for July 8, 2003. Judge Keary did not issue a "New Commitment" order on either July 7 or 8, 2003, indicating that the "no bond" arrest warrant was still in effect. *See id.,* docket entries for July 7 and July 8, 2003 ("New Commitment Executed" is left blank, a negative indication.) On July 9, 2003, the docket entry discloses that Judge Keary knew that Ford was "in Hospital," and issued a "no bond" commitment order, committing Ford to the custody of the D.C. jail superintendent. *See id.* docket entry for July 9, 2003, ("New Commitment Executed" is checked); *see also* Pet. Ex. J (Commitment Order with margin note "Hospital Case / D.C. Jail Howard University"). On July 24, 2003, a show cause hearing was held before Judge Keary, who revoked Ford's probation and sentenced him to one year in jail with credit for time served, followed by three months of supervised release. *See* App., docket entry for July 24, 2003; Pet. Ex. K. The docket entry for July 24, 2003 shows a check in the box indicating "New Commitment Executed." *Id.*

What is not Ford's Superior Court criminal case file is also consistent with the conclusion that Ford's custody on and after July 7, 2003 was continuous. The file does not contain an order releasing Ford from the custody imposed by the July 7, 2003 bench warrant or the July 9, 2003 commitment order; it does not contain any order directing law-enforcement officers to arrest or transport Ford during that period, or any other order suggesting that Ford was not in custody at any time between July 7 and July 24, 2003. Thus, the entire record is consistent with Ford's claim that he was in custody continuously from July 7, 2003 until he was released in December of that year. The fact that Ford was physically housed at the Howard University Medical Center for part of the seventeen-day period in July is not inconsistent with his being in custody.

Therefore, on this record, the Court determines that Ford spent the seventeen days from July 7

through July 23, 2003 in custody pursuant to two orders of the Superior Court.

> B.      *Ford's Sentence Expired Before the Parole Commission Warrant Was Issued*

It is well settled that imposing a sentence for conviction of a crime is a judicial function,

and that administering the sentence is an executive function. *See United States v. Wilson,* 503

U.S. 329, 335 (1992) ("After a district court sentences a[n] . . . offender, the Attorney General,

through the [Bureau of Prisons], has the responsibility for administering the sentence."). As part

of the executive branch of government, "[t]he Parole Commission has no authority to impose a

prison sentence upon conviction of a crime; this authority rests with the Superior Court of the

District of Columbia." *Montgomery v. U.S. Parole Comm'n,* Civil Action No. 06-2113 (CKK),

2007 WL 1232190, * 2 (D.D.C. April 26, 2007). Pursuant to its statutory authority to "grant,

deny, or revoke a District of Columbia offender's parole, . . . [t]he Parole Commission does not

exercise a judicial function and its decisions do not violate the separation of powers." *Id.* (citing

cases). Rather, parole revocation is "a separate administrative proceeding." *Maddox v. Elzie,*

238 F.3d 437, 445 (D.C. Cir. 2001) (citing *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972)).

The Superior Court sentenced Ford to twelve months of imprisonment, specifying that

any time already served in custody was to be credited to the twelve-month term; in addition, a

term of three months' supervised release was to follow "upon release" from the twelve-month

term of imprisonment. Pet. Ex. K. Ford's sentence, although expressed in operational terms,

was nonetheless defined and fixed, delimiting the period during which the federal respondents

had authority over Ford. The expressly fixed termination date for Ford's imprisonment was the

point at which Ford had served twelve months in custody; the expressly fixed commencement

date for his term of supervised release was also the point at which he had served twelve months

in custody. Had the Superior Court's sentence been stated with specific, instead of operational,

dates, it would have ordered Ford to be released from incarceration on November 1, 2003, and to

commence his three months' supervised release on November 1, 2003, and to be released from

supervision by February 1, 2004.[5] Thus, the sentence imposed on Ford expired well before the

Parole Commission issued its warrant on February 17, 2004.

    The federal respondents acknowledge that they erroneously over-detained Ford, *see*

Second Opp'n at 1, 5 n.5, 6, an act that is "analogous to false imprisonment." *Wormley v. United*

*States,* 601 F. Supp. 2d 27, 35 (D.D.C. 2009); *see Faniel v. Chesapeake & Potomac Tel. Co. of*

*Md.,* 404 A.2d 147, 150 (D.C. 1979) (defining the tort of false imprisonment as "(1) the detention

or restraint of one against his will, within boundaries fixed by the defendant, and (2) the

unlawfulness of the restraint"). Nonetheless, they rely on *United States v. Johnson*, 529 U.S. 53

(2000), to argue that regardless of the duration of the over-detention, "this time cannot be applied

to reduce his term of supervised release." Second Opp'n at 6. *Johnson* is not precedent for this

case and respondents' reliance on it is misplaced. Precedent is limited to the "general rule . . .

necessary to the actual decision reached, when shorn of unessential circumstances" and applies

---

    [5] These dates are based on the days in custody conceded by the federal respondents plus
the Court's finding that Ford was in custody during the seventeen-day period from July 7, 2003
through July 23, 2003. The parties agree that Ford had been in custody 248 days as of Ford's
release from custody on December 17, 2002. *See* Pet. ¶ 9; Second Opp'n 2, 5 n.5. With credit
for the disputed seventeen-day period in July 2003, Ford had spent 265 days in custody as of
July 24, 2003. The parties agree that Ford was in custody between July 24, 2003 and December
17 or 18, 2003 (a difference that is immaterial). Pet. ¶ 11 (stating that Ford was released on
December 17, 2003); Second Opp'n 2, 5 (stating that Ford was released on December 18, 2003).
The one hundredth day from July 24, 2003 is October 31, 2003. *See also* Pet. ¶ 11 (concluding
that Ford was due to be released from imprisonment on November 1, 2003.)

only to "an identical or similar case afterwards arising." Black's Law Dictionary (8th ed. 2004).
The material facts in this case differ fundamentally from those in *Johnson* and the other cases
that led the Supreme Court to grant certiorari in *Johnson*.[6]  Indeed, the facts differ such that the
controlling statute in *Johnson* does not, on its face, apply to Ford.

Johnson was convicted and sentenced for a drug offense, a firearms offense, and two
counts under 18 U.S.C. § 924(c) for using a firearm in connection with a drug trafficking offense.
*Johnson*, 529 U.S. at 54.  Pursuant to the federal sentencing guidelines, Johnson was sentenced to
a mandatory three-year term of supervised release to follow his release from prison.  *Id.* at 55.
While he was imprisoned, the Supreme Court decided *Bailey v. United States,* 516 U.S. 137
(1995), limiting the application of § 924(c) to facts that were not present in Johnson's case.
Johnson successfully moved the district court to vacate his two § 924(c) sentences, but by the
time the sentences were vacated by the district court, he had already served more than the
maximum amount of time in confinement imposed for his other offenses.  *Johnson*, 529 U.S.
at 55.  Released immediately to serve the supervised release portion of his sentence, Johnson
moved for a reduction of his term of supervised release by the same amount of time he had
already served on the sentences that had been vacated.  *Id.*  The district court refused to allow
Johnson to count his days in confinement on his vacated sentences toward his supervised release
sentence.  *Id.* at 55.  The Court of Appeals reversed, but the Supreme Court subsequently

------

[6]  Neither *Johnson,* nor any of the cases that led the Supreme Court to consider *Johnson*,
presented a fact situation where the executive had effectively imposed an unauthorized period of
detention on the prisoner, as is the fact in this case.  *See Johnson,* 529 U.S. at 56 (citing *United
States v. Blake,* 88 F.3d 824 (9th Cir. 1996); *United States v. Jeanes,* 150 F.3d 483 (5th Cir.
1998); *United States v. Joseph*, 109 F.3d 34 (1st Cir. 1997); *United States v. Douglas,* 88 F.3d
533 (8th Cir. 1996).

concluded that the district court's decision had been the correct one, *id.* at 56, that "the text of [18 U.S.C.] § 3624(e) resolve[d] the case" *id.* at 58, and held that "the Court of Appeals erred in treating respondent's time in prison as interchangeable with his term of supervised release" *id.* at 60.

Key to the Supreme Court's decision in *Johnson* was the language of the governing statute that provides in pertinent part as follows:

> **A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime** unless the imprisonment is for a period of less than 30 consecutive days.

18 U.S.C. § 3624(e) (emphasis added); *see Johnson,* 529 U.S. at 57-58 (discussing 18 U.S.C. § 3624(e)). By its own terms, this provision does not apply in Ford's case. After November 1, 2003, Ford, quite simply, was not "imprisoned in connection with a conviction for a Federal, State or local crime." 18 U.S.C. § 3624(e). Rather, he was imprisoned in *excess* of his imprisonment in connection with a conviction for a crime — apparently due to an error by the executive authority, critical facts not present in *Johnson.*

Also key to the Supreme Court's determination in *Johnson* was the statute's provision that "[a] prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment," 18 U.S.C. § 3624(a), and that "[t]he term of supervised release commences on the day the person is released from imprisonment," 18 U.S.C. § 3624(e); *see Johnson,* 529 U.S. at 58-59. There is no doubt that Johnson's authorized term of imprisonment expired when the district court ordered his immediate release in light of the intervening change in law occasioned by the decision in *Bailey*, 516 U.S. 137. True to the terms of the statute,

- 13 -

Johnson's term of supervised release commenced that same day. In contrast, Ford was not released when his term of imprisonment expired. And, because his continued unlawful detention was not "in connection with a conviction for a Federal, State or local crime," but was in excess of his imprisonment in connection with his conviction, § 3624(e) does not apply and presents no bar to treating his term of supervised release as running during the time when he was imprisoned without proper court authority. Thus, respondents' argument based on *Johnson* misses the point. In effect, the federal respondents urge this Court to either ratify or overlook their unauthorized over-detention of Ford and thereby allow the executive to extend its own jurisdiction as a by-product of its unlawful exercise of authority. This the Court declines to do.

The decision in this case turns on the fact that, unlike Johnson's sentence, which was revised by a court with the authority to alter the sentence, Ford's sentence imposed on July 24, 2003 was never revised by any appropriate authority. By operation of its express terms, Ford's Superior Court sentence to supervised release expired well before the Parole Commission issued its warrant for Ford's arrest. Consequently, Ford, unlike Johnson, does not — and need not — ask to substitute days in custody for days under supervision. Instead, Ford simply contends that on February 17, 2004, he was no longer under sentence of the Superior Court and therefore no longer subject to the authority of the federal respondents. The Court agrees.

## IV. CONCLUSION

For the reasons stated, the Court determines that the criminal sentence the Superior Court imposed on Ford expired before February 17, 2004, and that therefore Ford was not under the jurisdiction of the Parole Commission on February 17, 2004. It necessarily follows that the Commission's February 17, 2004 arrest warrant was void, and that neither Ford's arrest on

- 14 -

July 26, 2004 pursuant to the Commission's warrant nor anything that flowed from that arrest was duly authorized by law.  Accordingly, the writ of habeas corpus will be granted and the petitioner will be released from the remainder of his supervised release.

A separate order accompanies this memorandum opinion.

Date: Sept. 10, 2009

COLLEEN KOLLAR-KOTELLY
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KEVIN CHARLES FORD, SR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 07-1182 (CKK)** |
| | ) | |
| **JOHN CAULFIELD,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## APPENDIX to MEMORANDUM OPINION

(Consisting of pages 10 and 11 of the Docket Entries in the
District of Columbia Superior Court Criminal Case No. F-6069-01)

| DATE: 7-7-03 | COUNT(S) | PLEA OF NOT GUILTY WITHDRAWN / JURY DEMAND WITHDRAWN / PLEA GUILTY, JUDGMENT GUILTY | COUNT(S) C | CONTINUED DATE 7-8-03 | Continued for SC | In Courtroom Nbr 214 |
|---|---|---|---|---|---|---|
| COURT REPORTER 214  TAPE ☑ | COUNT(S) | Bench Warrant Ordered and issued Forthwith / Bench Warrant Bond $ | COUNT(S) | Preliminary Hearing ☐ Held ☐ Waived | ☐ Held for G.J. Action ☐ No Probable Cause | ☐ Remaining counts to be dismissed at sentencing |
| Counsel: ☑ IS NOT PRESENT | Defendant: ☑ IS NOT PRESENT | | BOND $ No Bond | ☐ CASH  % ☐ SURETY | | ☐ P.R. |

Defendant did not make cut off
cont'd atty notifyed

| Count(s) | Nolle Prosequi Prosecutor | Defendant released and warned ☐ of Penalties for failure to return |
|---|---|---|
| ☐ New Commitment Executed | ☐ Back To Jail O.C. | ☐ Release Executed | ☐ Not In Custody |

DISPOSED / PENDING — CLOSED, Held G.J., CONT. PAY, Show Cause C, B/W, Status, Jury, Non Jury, Sent., Others — 7.7.03 CLERK KWF  JUDGE/COMM. Keary

| DATE: 7-8-03 | COUNT(S) | PLEA ... | COUNT(S) C | CONTINUED DATE 7-9-03 | SC | 214 |
|---|---|---|---|---|---|---|

unable to locate deft  Show cause cont'd

DISPOSED / PENDING — CLERK LWF KWF JUDGE/COMM. a Keary

| DATE: 7-9-03 | COUNT(S) | PLEA ... | COUNT(S) C | CONTINUED DATE 7-24-03 12:30PM | SC | 214 |
|---|---|---|---|---|---|---|

BOND $ No Bond
Deft in Hospital show cause cont'd atty & CSO notifyed.

☑ New Commitment Executed
DISPOSED / PENDING — CLERK KWF JUDGE/COMM. Keary

| Name: KEVIN C FORD | Docket No.: F6069-01 |

| DATE: 7-24-03 | COUNT(S) | PLEA OF NOT GUILTY WITHDRAWN JURY DEMAND WITHDRAWN PLEA GUILTY, JUDGMENT GUILTY | COUNT(S) | CONTINUED DATE | Continued for: | In Courtroom Nbr. |
|---|---|---|---|---|---|---|
| COURT REPORTER .214 | TAPE ☑ | COUNT(S) | Bench Warrant Ordered and issued Forthwith | COUNT(S) | Preliminary Hearing ☐ Held    Held for G.J. Action ☐ Waived   ☐ No Probable Cause | | ☐ Remaining counts to be dismissed at sentencing |

Counsel: ☐ IS PRESENT ☐ IS NOT PRESENT   Defendant: ☐ IS PRESENT ☐ IS NOT PRESENT   BOND $ ____   ☐ CASH ☐ SURETY   ☐ P.R.

*Show cause hearing held. Probation revoked as to count "one" one year in jail w/ credit for time served. Three months supervised release order fil[e]d 7.28.03 Federal designation*

Count(s) ____ Nolle Prosequi ____ Prosecutor ____   Defendant released and warned ☐ of Penalties for failure to return ____

| ☑ New Commitment Executed | ☐ Back To Jail O.C. | ☐ Release Executed | ☐ Not In Custody |
|---|---|---|---|

| DISPOSED | | | | PENDING | | | | | CLERK | JUDGE/COMM. |
|---|---|---|---|---|---|---|---|---|---|---|
| CLOSED | Held G.J. | CONT. PAY | Show Cause | B/W | Status | Jury | Non Jury | Sent. | Others | Updated By |

*Keary*

| DATE: 8/9/05 | COUNT(S) | PLEA OF NOT GUILTY WITHDRAWN JURY DEMAND WITHDRAWN PLEA GUILTY, JUDGMENT GUILTY | COUNT(S) | CONTINUED DATE | Continued for: | In Courtroom Nbr. |
|---|---|---|---|---|---|---|
| COURT REPORTER | TAPE ☐ | COUNT(S) | Bench Warrant Ordered and issued Forthwith Bench Warrant Bond $ ____ | COUNT(S) | Preliminary Hearing ☐ Held    ☐ Held for G.J. Action ☐ Waived   ☐ No Probable Cause | | ☐ Remaining counts to be dismissed at sentencing |

Counsel: ☐ IS PRESENT ☐ IS NOT PRESENT   Defendant: ☐ IS PRESENT ☐ IS NOT PRESENT   BOND $ ____   ☐ CASH ☐ SURETY   % ____   ☐ P.R.

*Order filed herein denying defendants pro se 8/7/04, 9/13/04, 9/30/04 and 10/6/04 motions. Copies previously mailed from chambers (jacket was missing).*

Count(s) ____ Nolle Prosequi ____ Prosecutor ____   Defendant released and warned ☐ of Penalties for failure to return ____

| ☐ New Commitment Executed | ☐ Back To Jail O.C. | ☐ Release Executed | ☐ Not In Custody |
|---|---|---|---|

| DISPOSED | | | | PENDING | | | | | CLERK | JUDGE/COMM. |
|---|---|---|---|---|---|---|---|---|---|---|
| CLOSED | Held G.J. | CONT. PAY | Show Cause | B/W | Status | Jury | Non Jury | Sent. | Others | Updated By |

*Keary*

| DATE: | COUNT(S) | PLEA OF NOT GUILTY WITHDRAWN JURY DEMAND WITHDRAWN PLEA GUILTY, JUDGMENT GUILTY | COUNT(S) | CONTINUED DATE | Continued for: | In Courtroom Nbr. |
|---|---|---|---|---|---|---|
| COURT REPORTER | TAPE ☐ | COUNT(S) | Bench Warrant Ordered and issued Forthwith Bench Warrant Bond $ ____ | COUNT(S) | Preliminary Hearing ☐ Held    ☐ Held for G.J. Action ☐ Waived   ☐ No Probable Cause | | ☐ Remaining counts to be dismissed at sentencing |

Counsel: ☐ IS PRESENT ☐ IS NOT PRESENT   Defendant: ☐ IS PRESENT ☐ IS NOT PRESENT   BOND $ ____   ☐ CASH ☐ SURETY   % ____   ☐ P.R.

Count(s) ____ Nolle Prosequi ____ Prosecutor ____   Defendant released and warned ☐ of Penalties for failure to return ____

| ☐ New Commitment Executed | ☐ Back To Jail O.C. | ☐ Release Executed | ☐ Not In Custody |
|---|---|---|---|

| DISPOSED | | | | PENDING | | | | | CLERK | JUDGE/COMM. |
|---|---|---|---|---|---|---|---|---|---|---|
| CLOSED | Held G.J. | CONT. PAY | Show Cause | B/W | Status | Jury | Non Jury | Sent. | Others | Updated By |

Name: *Kearn Ford*     Docket No.: F-4069.0)

Form CD-104(b)JUNE 90     PAGE 1)     0-2964-w4259